# EXHIBIT A

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOOST US, INC., a Delaware corporation, JOOST N.V., a Netherlands Antilles corporation, and JOLTID LIMITED, a British Virgin Islands corporation, | : : : : | |
| | : | |
| Plaintiffs, | : | |
| | : | C.A. No. _____ |
| v. | : | |
| | : | |
| MICHELANGELO VOLPI and INDEX VENTURES MANAGEMENT, S.A., a Swiss corporation, | : : : | |
| | : | |
| Defendants. | : | |

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Joost US, Inc. ("Joost US"), Joost N.V. ("Joost NV") (collectively,

"Joost"), and Joltid Limited ("Joltid") (collectively, "Plaintiffs"), by and through their

undersigned counsel, and upon knowledge to themselves and otherwise upon information

and belief, allege as follows for their claims against defendants Michelangelo Volpi

("Volpi") and Index Ventures Management, S.A. ("Index") (collectively, "Defendants"):

### INTRODUCTION

1.     This action arises out of the acts of a faithless fiduciary, who has taken

advantage of the trust and confidence placed in him to steal confidential, highly

proprietary information relating to an extremely popular Internet-based technology, as

well as other strategic, commercially valuable and sensitive information, shared with him

as a fiduciary. Using that misappropriated information and in utter disregard for his

fiduciary obligations, Volpi, acting in concert with other participants, put together a

successful bid for Skype Luxembourg Holdings S.a.r.l. (along with its subsidiaries, "Skype") that has shocked the investment community. As noted by Joe Nocera in his September 5, 2009 *New York Times* article, "[m]any people on Wall Street – and a number of telecommunications experts I spoke to this week – were stunned by the price Skype sold for," in part because a Skype loss in pending copyright litigation, "for all intents and purposes, would mean shutting down Skype itself."

2.     As explained below, the Skype acquisition could not have occurred without the theft of Plaintiffs' confidential information, information that appears to have been utilized in the successful bid for Skype. In fact, numerous sophisticated strategic bidders (including, among others, Google and Microsoft) who initially expressed an interest in Skype could not get comfortable proceeding with formal bids. The reluctance of these sophisticated parties is hardly surprising given that intellectual property that is essential to Skype's business currently hangs under a cloud of litigation. Yet somehow the successful bidder, led by Volpi, was able to get comfortable with the enormous risks of proceeding with a Skype transaction. That comfort level could have been obtained only with knowledge of and an intent to use confidential information that had been misappropriated by Volpi in violation of his fiduciary duties.

3.     As the former President and Chief Executive Officer of the Joost group of companies, and specifically of Joost US, and as a former director of Joost NV, Volpi was exposed to a significant amount of highly confidential and sensitive information belonging to Joost and Joltid (defined herein, and in greater detail below, as the "Confidential Information"). Volpi had a fiduciary duty to protect the Confidential Information and not use it for his own benefit. Indeed, it was only because of his status

2

as a Joost US officer, Joost NV board member and fiduciary of the Joost group of companies that Volpi was ever given access to trade secrets, including Joltid's valuable Global Index Software ("GI Software"), which is the software program that is the life blood of peer-to-peer technology. A source code version of the GI Software is licensed by Joltid to Joost, allowing Joost to be the first company to successfully deliver television and other video content in real-time over a peer-to-peer network. An executable-only object code form of the GI Software was licensed by Joltid to Skype, a well-known Internet-based company that provides users throughout the world with free or low-cost telephone services over the Internet. Skype did not obtain a license to the GI Software source code, however, and the license it did obtain was terminated based on Skype's breaches of the license agreement.

4.     Among other highly confidential, material non-public information, Volpi was privy to Joost's efforts, which he directed, to reengineer Joltid's GI Software so as to preserve the peer-to-peer operation and network while eliminating the need for users to download a piece of software, and to develop certain premium service capabilities for peer-to-peer networks (such as "live broadcast" peer-to-peer streaming). Volpi also gained specialized, proprietary knowledge regarding how to modify a commercial service that relies on GI Software and peer-to-peer technology to operate on a platform not utilizing peer-to-peer technology. By virtue of having led the effort to transition the Joost service to a non-peer-to-peer platform, Volpi became intimately familiar with the GI Software, including gaining knowledge of the viability of removing it from a commercial service that relies on it.

5.     But for his fiduciary obligation to maintain this information in the strictest confidence and not use it for his own personal benefit or the benefit of persons or entities other than Joost, Volpi would never have been permitted access to such highly proprietary and valuable information.

6.     Plaintiffs' Confidential Information has enormous value, in the billions of dollars, and provides Plaintiffs with a substantial competitive advantage in the Internet, telecommunications, networking and media technology sectors. Volpi understood the competitive sensitivity of the Confidential Information and the need to keep it confidential. As a consequence of his fiduciary duties, Volpi was and remains obligated to keep the Confidential Information secret and never to use or disclose it for any unauthorized purpose.

7.     Volpi has maliciously and willfully breached his fiduciary duties. With the aid of, in concert with, and/or on behalf of Index, who owes an independent duty of confidence to both Joost and Joltid, Volpi has misappropriated the Confidential Information and used it to deprive Plaintiffs of their property, as well as the competitive advantages attendant to the Confidential Information.

8.     Aware of its tremendous value, and on behalf of himself and his partners at Index, Volpi used his knowledge of the Confidential Information to form a group of investors (the "Buyout Group") to acquire Skype from eBay. The Buyout Group made a surprisingly aggressive bid for Skype, something that other investors were unwilling to do in the face of the copyright litigation in the United Kingdom and the uncertain future it created for Skype.

4

9.     Volpi's knowledge of the Confidential Information allowed the Buyout Group to make an aggressive bid to purchase Skype because it provided comfort that, regardless of the outcome of the litigation in the United Kingdom, Joltid's continued ownership of the GI Software would not serve as an impediment to the future development and operation of Skype because of his familiarity with the Confidential Information. Volpi's knowledge of the Confidential Information would allow the Buyout Group to circumvent Joltid's intellectual property rights if necessary.

10.     In fact, but for his knowledge of the Confidential Information, Volpi would never have been in position to play a key role in the Skype acquisition in the first place. Volpi and Index lacked the credibility and financial heft to lead a private equity investment consortium to acquire Skype unless and until they advertised their knowledge of the Confidential Information. Volpi traded on his knowledge of Plaintiffs' Confidential Information to secure a key role in the Buyout Group's acquisition of Skype.

11.     Defendants' misappropriation of the GI Software and Plaintiffs' Confidential Information has caused and will cause irreparable harm if not immediately enjoined. Unless the Court intervenes, Volpi intends to continue to violate his duties and misappropriate the Confidential Information. Volpi has repeatedly failed to comply with Joost's demands that he immediately return his computer and all Confidential Information he obtained in the course of his fiduciary relationship with Joost.

## PARTIES

12.     Plaintiff Joost US, Inc. is incorporated under the laws of the State of Delaware. Among other things, Joost US operates an Internet television and video service that distributes programming from a variety of networks and other sources.

5

13.     Plaintiff Joost N.V. is a Netherlands Antilles company and the indirect parent corporation of Joost US.

14.     Plaintiff Joltid Limited is incorporated in the British Virgin Islands. Joltid owns the intellectually property rights to the GI Software.

15.     Defendant Michelangelo Volpi is an Italian citizen who primarily resides in London, England. Volpi is the former President and Chief Executive Officer of Joost US and a former director of Joost NV. In or around July 2009, Volpi became a general partner of Index.

16.     Defendant Index Ventures Management, S.A. ("Index") is incorporated in Switzerland and maintains offices in Geneva, Switzerland, London, England and the Bailiwick of Jersey, a British Crown Dependency located in the Channel Islands.

## JURISDICTION

17.     This Court has jurisdiction over this action pursuant to 10 *Del. C.* § 341.

18.     Personal jurisdiction over Volpi exists pursuant to 10 *Del. C.* §§ 3104 and 3114 because, among other things, he was an officer of Joost US, a Delaware corporation.

19.     Personal jurisdiction over Index exists pursuant to 10 *Del. C.* § 3104 because, among other things, Index manages and operates a compilation of venture capital funds, including three limited partnerships organized in the State of Delaware: Index Ventures I (Delaware), L.P., Index Ventures II (Delaware), L.P., and Index Ventures III (Delaware), L.P.; Index manages and operates Index Ventures Growth I, L.P., a member of the investor consortium attempting to acquire Skype, a subsidiary of which is Skype, Inc., a Delaware corporation, from eBay, a Delaware corporation; Index is a Joost investor; and, upon information and belief, Index regularly transacts business in

Delaware including but not limited to the solicitation of investors located in Delaware, the transaction of business with investors located in Delaware, and the investment of funds with business entities located, organized or incorporated in Delaware.

## GENERAL ALLEGATIONS

**A.     The GI Software Used By Skype Revolutionized Internet-Based Telephony.**

20.     Skype allows users to make telephone calls over the Internet. Skype has enjoyed unprecedented success since its launch in 2003 and has grown into one of the most popular Internet-based services, providing low-cost services to millions of customers in nearly every country. It is now one of the world's largest international voice carriers, servicing over 480 million cumulative users and, in 2008, approximately 8% of all cross-border calls.

21.     The GI Software owned by Joltid is critical to Skype's success. Its unique function permits Skype to operate as a "peer-to-peer" network, which allows users to effectively communicate directly with each other without the trafficking of communications through a centralized server. This decentralized "peer-to-peer" structure allows Skype to expand its network of users rapidly and without incurring the costs associated with a centralized-server structure. Without the GI Software, Skype simply cannot function.

**B.     EBay Purchases Skype And Inherits A License To Use The GI Software.**

22.     In 2005, Skype's shareholders, including its founders Janus Friis ("Friis") and Niklas Zennström ("Zennström") who conceived of and originated the "peer-to-peer" GI Software, sold Skype to eBay. The principal consideration was cash and eBay stock

7

valued at approximately \$2.6 billion, with additional future "earn-out" consideration to be provided to certain of the shareholders, including Friis and Zennström.

23.    EBay did not, however, purchase the GI Software. The GI Software was not a part of the eBay-Skype transaction, as Skype never owned the intellectual property rights to the GI Software. Joltid, an entity formed by Friis and Zennström, developed the GI Software and since its creation has owned all intellectual property rights to the GI Software and other key peer-to-peer technology. Any injury to the rights to the GI Software is a direct injury to Joltid.

24.    Skype and Joltid had entered into a license agreement granting Skype the right to use only an executable-only form of the GI Software. In other words, Skype obtained a license to only the GI Software "object code," not the "source code." The source code consists of the programming statements that, when compiled, can be translated into a sequence of instructions that the computer processor can understand and execute. The compiled output is the object code. The source code of a software program is the most valuable intellectual property because only the source code can alter and modify the program. The object code is essentially un-editable. Thus, although Skype had a license to the GI Software that allowed its peer-to-peer network to function, Skype was prohibited from modifying, reengineering or improving the GI Software because it did not hold a license to the programming source code.

**C.    Volpi Joins Joost And Gains Knowledge Of The Confidential Information.**

25.    After the sale of Skype to eBay, Friis and Zennström formed Joost in 2006. Joost distributed television and other video content over the Internet using the GI Software pursuant to an existing license from Joltid. Just as with Skype, Joost's use of

8

the peer-to-peer technology was thought to offer the opportunity for substantial growth without the need to construct expensive server infrastructure.

26.    Unlike Skype, however, Joost has access to the GI Software source code pursuant to the license agreement from Joltid. Thus, Joost has direct access to the source code that allows Skype to function but that Skype itself cannot access.

27.    In June 2007, Volpi was hired as President and CEO of the Joost group of companies, and specifically Joost US. Volpi subsequently was appointed as a director of Joost NV, the indirect parent corporation of Joost US and other Joost entities. Volpi served as President and CEO of Joost US and the Joost group of companies until July 2009, and remained a director of Joost NV until he was removed on September 3, 2009.

28.    At the time Volpi became CEO, Joost's services were supported by peer-to-peer technology through the existing GI Software license from Joltid. Among other things, Joost at that time delivered recorded and live video over the Internet. By utilizing the GI Software, Joost was the first provider to deliver high-quality video over a peer-to-peer network, which was a significant competitive advantage because of the bandwidth cost of video delivery. For example, Joost ran a beta-test of video delivery of the NCAA "March Madness" basketball tournament on a peer-to-peer basis.

29.    Several highly confidential and competitively sensitive endeavors were undertaken by Joost during the period that Volpi was an officer and/or director. These included strategic business plans to expand Joost into China, Taiwan and Korea and to combine Joost with Skype through the acquisition of Skype from eBay, efforts to reengineer the GI Software to modify the peer-to-peer model to eliminate the need for users to download a software program, engineering the migration of end-users of a peer-

to-peer application to a web server-based system, and research and development efforts concerning the sharing of video on a peer-to-peer basis.

30. During his tenure as CEO, Volpi decided that it was critical that Joost's operating platform be reengineered, including the GI Software and peer-to-peer technology. Based on Volpi's theories that bandwidth was not costly, servers could be operated inexpensively and peer-to-peer technology is too complex, Volpi commenced an expensive effort to implant Flash software and other technologies and to use centralized servers. Volpi drastically restructured the engineering department at Joost, employing over 100 engineers. Volpi had regular interaction with these software engineers, and thereby personally acquired confidential knowledge regarding how to engineer around the GI Software.

31. In a very short time, Volpi burned through a substantial amount of the working capital available to Joost at the time he became CEO. Moreover, he had removed from Joost a significant portion of Joost's innovative and market-driving technology, leaving Joost to rely on third-party technology products.

32. Volpi's overall business strategy failed. Moreover, it was a failure that was extremely expensive, with Joost expending tens of millions of dollars of investors' capital.

33. Volpi, meanwhile, had collected extremely valuable Confidential Information regarding Joost, Skype, Joltid and the GI Software. By virtue of having led multiple significant initiatives involving peer-to-peer technology, Volpi was intimately familiar with the GI Software source code and how it could and could not be used and modified. This included proprietary knowledge about how the GI Software can be

10

removed and returned to operating platforms that use the GI Software, such as Skype. Volpi gained knowledge of the viability of modifying and the means and methods to modify a commercial service relying on the GI Software and peer-to-peer technology for a business not utilizing peer-to-peer technology. All of this knowledge constitutes Plaintiffs' Confidential Information and Volpi cannot disclose or otherwise use it to benefit any parties other than Joost and Joltid.

**D.      Skype And Joltid Become Embroiled In Copyright Litigation.**

34.     In March 2009, Skype filed a claim in the English High Court of Justice against Joltid (the "UK Litigation"). The UK Litigation remains pending, and further details remain sealed as a matter of UK law. As reported in eBay's SEC filings, Joltid terminated the license agreement between the parties, alleging that Skype was not licensed to possess, use, or modify the GI Software source code and that, because Skype had done so and had disclosed the source code in certain U.S. patent cases, Skype had breached the license agreement. Joltid also filed defenses and counterclaims alleging that Skype had repudiated the license agreement, infringed Joltid's copyright, and misused confidential information.

**E.      EBay Places Skype On The Selling Block.**

35.     In April 2009, eBay announced that it was selling Skype, began preparing for an initial public offering for 2010, and invited bids to purchase Skype. The uncertainty of the future of Skype's ability to use the GI Software, however, clouded any meaningful interest from investors. The possible stagnation of Skype's revenues due to the limitations of the current peer-to-peer model also affected the price that investors would be willing to pay for Skype, particularly inasmuch as the intellectual property

rights to modify, alter or improve the GI Software did not belong to Skype, and potential investors lacked knowledge about how to re-engineer the Skype operating platform to replace its dependence on the GI Software.

36.     EBay publicly acknowledged this challenge. Although Skype had purportedly begun an "expensive" effort to develop an alternative to the GI Software, eBay admitted in an SEC filing that if Skype "was to lose the right to use the Joltid software as the result of the litigation, and if alternative software was not available, Skype would be severely and adversely affected and the continued operation of Skype's business as currently conducted would likely not be possible." A September 5, 2009 *New York Times* article noted that, "[i]n a court hearing in London last June, eBay's lawyer told the court that if [the owners of Joltid] won the case, the result would be 'devastating.'"

37.     In the face of these issues, potential purchasers of Skype, including both Google and Microsoft, declined to proceed with bids despite their interest in acquiring Skype. As reported by Brad Stone and Claire Cain Miller in a September 1, 2009 *New York Times* article, "[l]ast month, eBay also negotiated with Google over buying Skype, according to a person briefed on those discussions. But Google ultimately walked away from a potential deal, fearing that continued litigation could leave it vulnerable to immense damages."

38.     Only an investor group with direct access to the rights to the GI Software and/or that possessed the ability and knowledge to reengineer, remove and/or redeploy the GI Software could take full advantage of Skype's potential. Only persons and entities that were or had been affiliated with Plaintiffs had such knowledge.

**F.      Volpi Begins Assembling A Deal To Acquire Skype.**

39.      In or around May 2009, while a Joost officer and director, Volpi began secretly orchestrating a deal to acquire Skype on behalf of himself and Index.

40.      In addition to Volpi's fiduciary obligations to Joost, Index is independently prohibited from using, misappropriating or disclosing Plaintiffs' Confidential Information pursuant to a non-disclosure agreement it entered with Joost on November 1, 2007. Under that agreement, Index must preserve and protect the intellectual property, trade secrets, confidential information, or any other information of a secret, proprietary, confidential or generally undisclosed nature that it receives, including Confidential Information that was brought to Index by Volpi.

41.      Joltid's interests are covered by the non-disclosure agreement and Joltid is an intended third-party beneficiary of that agreement. The non-disclosure agreement specifically prohibits Index from disassembling, reverse engineering, reverse compiling or analyzing the inputs or outputs of any software or hardware for which it obtains access, including the GI Software owned by Joltid, for any purpose, including but not limited to attempting to ascertain or deduce the functionality of the software or hardware.

42.      In July 2009, and while remaining a Joost director, Volpi left his CEO position at Joost US and formally joined Index as a general partner. Notwithstanding Volpi's and Index's duties concerning Plaintiffs' Confidential Information, Volpi and Index continued their ongoing effort to purchase Skype on behalf of an investor group that included Index, Silver Lake Partners, Andreessen Horowitz LLC, and the Canada Pension Plan Investment Board (the "Buyout Group").

43. Volpi leveraged his knowledge of the Confidential Information to secure a key role in the Skype acquisition. Volpi had virtually no private equity experience, and he and Index lacked the credibility and financial heft to lead a private equity investment consortium to acquire Skype unless and until they advertised their knowledge of confidential GI Software. Index itself was formed as a venture capital investment fund and had no history of leading, or for that matter participating in, buy-out transactions.

44. Armed with the knowledge of the Confidential Information that he had gained at Joost, and while still a Joost director, Volpi helped the Buyout Group secure an agreement to purchase Skype from eBay. According to public reports, under the terms of the acquisition agreement, the Buyout Group would control approximately 65 percent of Skype, while eBay would retain a 35 percent stake. Skype was purportedly valued at $2.75 billion. EBay expects to receive approximately $1.9 billion in cash upon the completion of the sale and a note in the principal amount of $125 million. The transaction is purportedly not subject to a financing condition and is expected to close in the fourth quarter of 2009.

45. The announcement of the sale shocked the investment world. As noted by Joe Nocera in his September 5, 2009 *New York Times* article, "[m]any people on Wall Street – and a number of telecommunications experts I spoke to this week – were stunned by the price Skype sold for," in part because a victory for Joltid in the UK Litigation, "for all intents and purposes, would mean shutting down Skype itself."

46. In the face of the uncertainty shared by the remainder of the investment community, however, the Buyout Group was so confident it could make the Skype

14

acquisition successful despite the UK Litigation that it agreed to a $300 million penalty if it backs away from the acquisition agreement.

47. But for Volpi representing that he had the necessary knowledge of the Confidential Information, the Buyout Group most certainly would not have been able to make the bid to acquire Skype. Without Volpi, the Buyout Group could not have sufficiently understood the technology to make an investment decision. To make an investment decision regarding a Skype acquisition bid, an investor would have needed to know either (1) Confidential Information concerning the GI Software including its potential for replacement and any cost differentials, information that no other member of the Buyout Group had besides Volpi, or (2) that Skype would prevail in the UK Litigation, information the Buyout Group could not have had, especially given that the court papers remain under seal.

48. To put the deal together, Volpi misappropriated the Confidential Information and was and is poised to benefit from the trade secrets and other Confidential Information attendant to the exclusive rights to the GI Software.

49. Indeed, on behalf of Index and the Buyout Group, Volpi personally conducted the technical due diligence on the Skype deal, including analysis of intellectual property issues, by participating in interviews with numerous Skype engineers in Estonia concerning the GI Software, all at a time when Volpi was still serving not only as a Joost director, but also its Chairman.

50. Meanwhile, in further breach of his fiduciary duties as a sitting director of Joost, and while secretly preparing to make a bid for Skype, Volpi made direct and

15

personal efforts to recruit Joost engineers intimately familiar with the GI Software source code and other Confidential Information to join Skype, as well as other employees.

51.    Volpi has publicly boasted that he helped put the Index-Skype deal together. Moreover, in a September 6, 2009 article in *The Sunday Times*, Volpi was quoted as stating: "Every company has a set of assets and liabilities and we understand the litigation is one of Skype's liabilities. . . . We are confident we can figure out a way [a]round it."

52.    The September 5, 2009 *New York Times* article suggested what the investing world had recognized, namely that the only logical possibility was that Volpi was intending to use the Confidential Information he acquired from Joost:

> In this environment, big-time private equity firms don't commit $2 billion if there is a serious possibility the company they've just bought might be put out of business. As it happens, not long before Index Ventures became interested in Skype, it brought on board a man named Michelangelo A. Volpi, a highly respected former Cisco executive who — hmmm — once sat on the Skype board. In fact, he was so well liked by the Skype founders that they hired him to run Joost. Wouldn't you know it? Joost uses the same peer-to-peer technology as Skype . . . .

53.    Following the announcement of the Buyout Group's agreement to purchase Skype, and in a failed attempt to cure his inherently problematic involvement in the Buyout Group's bid and excuse his past and future misconduct, Volpi claimed to Joost that he could "reverse engineer" the GI Software in a "clean room." Any design effort involving Volpi, of course, cannot under any circumstances be a "clean room" given his inseparable knowledge of the Confidential Information.

## G.    Volpi Refuses To Return The Confidential Information.

54.    Concerned that Volpi had violated and was violating his duties to preserve and protect the Confidential Information, Joost informed Volpi in writing on September 4,

16

2009 that he was terminated from his position as a director of Joost NV, effective September 3. Volpi was also reminded of his fiduciary obligations to maintain the confidentiality of all Confidential Information and was ordered to return all Confidential Information and any other Joost property in his possession, including electronic devices such as a laptop computer known to be in his possession. The September 4 letter also specifically warned Volpi that his failure to comply would result in legal proceedings to enforce Joost's rights. Volpi failed to respond.

55.     On September 8, 2009, Joost sent a second letter reiterating its demands. Again, Volpi refused to respond. On September 10, 2009, Joost sent a third and final letter to Volpi informing him that given his failure to respond to its requests, it was compelled to commence legal proceedings against him.

56.     In addition, after his removal as director was effective and Joost had demanded the return of all Confidential Information, Volpi unlawfully accessed Joost computers and Confidential Information without authorization and took steps to make an imaged copy of Confidential Information.

57.     The conduct of the Defendants has caused significant injury to Plaintiffs for which there is no adequate remedy at law. Among other things, Defendants' conduct has deprived Joost of its Confidential Information, thereby denying Joost the opportunities to capitalize on the value and prospects of the Confidential Information. Among other things, Defendants' conduct has denied Joltid its full rights and benefits attendant to its ownership of the GI Software, including but not limited to its ability to secure substantial revenues from its intellectual property rights by way of license agreements or obtaining an interest in a going-forward Skype entity.

## SPECIFIC ALLEGATIONS

### First Claim For Relief – Breach Of Fiduciary Duty

### (Joost Against Volpi)

58. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

59. As an officer and director of Joost, Volpi owed fiduciary duties as a matter of law, duties that continue beyond his service.

60. Volpi knowingly, intentionally and willfully breached his fiduciary duties by engaging in a number of unauthorized acts concerning the Confidential Information, contrary to the purposes for which the Confidential Information was provided and entrusted to him, and by otherwise using the Confidential Information in a manner directly adverse to Joost.

61. While still an officer and/or director of Joost, and concomitant to his secret efforts to orchestrate a successful bid to buy Skype, Volpi solicited key employees to leave Joost and join Skype.

62. Volpi used and disclosed the Confidential Information obtained by way of his breaches for his own benefit and to the detriment of Joost. Volpi intends to continue such conduct into the foreseeable future.

63. Volpi violated his fiduciary duties by failing to disclose conflicts of interest including but not limited to those created as a result of Volpi joining the board of advisors of Ooyala, Inc. ("Ooyala"), a direct competitor of Joost, during the same period of time that he was conducting business with or concerning Ooyala on behalf of Joost, all of which had an adverse affect on Joost.

18

64. Volpi violated his fiduciary duties by appropriating opportunities that belonged to Joost, including but not limited to opportunities to benefit from research, development and business strategies concerning peer-to-peer GI Software and other Joost trade secrets and other Confidential Information.

65. Volpi's breaches of his fiduciary duties have caused damage, loss and irreparable harm to Joost, for which there is no adequate remedy at law.

## Second Claim For Relief – Aiding And Abetting Breach Of Fiduciary Duty

## (Joost Against Index)

66. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

67. As set forth above, Volpi breached his fiduciary duties to Joost.

68. Index was aware that Volpi had access to Confidential Information. Index was aware that Volpi was breaching or going to breach his fiduciary duties to Joost by, among other things, using Confidential Information he obtained in his capacity as a fiduciary, and Index gave substantial assistance and encouragement to Volpi. Indeed, a material assumption of the Buyout Group was that Volpi's misuse of Confidential Information would give it a competitive advantage. The conduct of Index was a substantial factor in causing harm to Joost.

69. Index is thus responsible for Volpi's breaches and, accordingly, the damage, loss and irreparable harm to Joost caused by such breaches, for which there is no adequate remedy at law.

## Third Claim For Relief – Interference With Prospective Business Advantage

### (Each Plaintiff Against Each Defendant)

70. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

71. At all times herein mentioned, each of the Defendants was an agent of the remaining Defendants and in doing the things hereinafter alleged was acting within the course and scope of such agency and with the permission and consent of the other Defendants.

72. Plaintiffs own prospective advantages in benefiting from their intellectual property rights to the GI Software and their Confidential Information. As the exclusive owners and licensees of the GI Software and the Confidential Information concerning its potential, Plaintiffs had the most advantageous prospect of improving or altering the peer-to-peer technology that, among other things, allows Skype to function, through contractual relationship or otherwise.

73. Defendants, as did the remainder of the potential investing community, were aware of the prospective advantage held by Plaintiffs.

74. To obtain an unfair competitive advantage and deprive Plaintiffs of the prospective advantages rightfully belonging to Plaintiffs, Defendants independently and in concert with each other intended to disrupt Plaintiffs' prospective advantages.

75. Defendants actually disrupted Plaintiffs' prospective advantages by engaging in independently wrongful acts including, among other things, misappropriating the Confidential Information and representing to Skype, eBay and others that Defendants could provide the advantages possessed only by Plaintiffs.

76. As a result of Defendants' conduct, Plaintiffs suffered injuries and sustained damages in an amount according to proof. Plaintiffs have also suffered irreparable harm for which they have no adequate remedy at law.

## Fourth Claim For Relief – Misappropriation Of Trade Secrets

## (Each Plaintiff Against Each Defendant)

77. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

78. At all times herein mentioned, each of the Defendants was an agent of the remaining Defendants and in doing the things hereinafter alleged was acting within the course and scope of such agency and with the permission and consent of the other Defendants.

79. Volpi served as a director and officer of Joost and had access to, and was in possession of, the Confidential Information owned by Plaintiffs. The Confidential Information included trade secrets consisting of the source code and other proprietary information concerning the GI Software and potential modifications, alterations and improvements to the GI Software, including but not limited to the trade secrets regarding the viability of modifying and the means to modify a commercial service relying on the GI Software and peer-to-peer technology so as to operate on a platform not utilizing peer-to-peer technology.

80. Plaintiffs' trade secrets have economic value in that, among other things, the GI Software comprises the source code that, when compiled into object code, is used to operate Skype. Plaintiffs own all rights to modify, alter and improve the GI Software. Plaintiffs also own the competitive advantages of the intellectual property rights to the GI

Software. As the exclusive owners and licensees of the GI Software and the Confidential Information, Plaintiffs have the most advantageous prospect of improving or altering the peer-to-peer technology that, among other things, allows Skype to function.

81.     Plaintiffs made reasonable efforts to insure that the trade secrets remained a secret by, among other things, keeping the GI Software and the Confidential Information concerning their research and development efforts as to the GI Software strictly confidential, disclosing it only to employees and licensees subject to expansive non-disclosure obligations, and prohibiting licensees from modifying, altering or improving the GI Software.

82.     Defendants misappropriated the above-described trade secrets by taking, using, disclosing and refusing to return them upon demand.

83.     As a proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered actual damages. As a further proximate result of the misappropriation, Defendants have been unjustly enriched by use and disclosure of the trade secrets.

84.     Plaintiffs are informed and believe and thereon allege that the aforementioned acts of the Defendants were willful and malicious in that Defendants misappropriated Plaintiffs' trade secrets with the deliberate intent to injure Plaintiffs' businesses and improve their own.

85.     Defendants' wrongful conduct in misappropriating Plaintiffs' trade secrets, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs' businesses in that Plaintiffs have and will lose the

opportunities to rightfully gain from their trade secrets. Plaintiffs have no adequate remedy at law for the injuries being suffered and which are threatened.

## Fifth Claim For Relief – Breach Of Contract

### (Each Plaintiff Against Index)

86. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

87. Joost and Index entered into an express agreement by which, among other things, Index promised and accepted a duty to preserve and protect the Confidential Information both during their relationship and thereafter.

88. Joltid is an intended third-party beneficiary of that contract, as the Confidential Information concerning the GI Software owned by Joltid is at the center of the subject matter of the contract. In addition to the applicability of the confidentiality provisions of the contract to Joltid's GI Software, the contract provides that "[i]f software is involved, [Index] will not disassemble, 'reverse engineer,' 'reverse compile,' or analyze the inputs or outputs of any software or hardware provided under this Agreement for any purpose, including but not limited to, attempting to ascertain or deduce the functionality or workings of the software or hardware."

89. Index breached its contractual obligations by engaging in unauthorized acts concerning the Confidential Information, including misappropriation, use and disclosure. Index's breaches are continuing in nature and Index is regularly committing new and independent breaches by its continued use of the Confidential Information.

90. As a result of Index's actions and inactions, Plaintiffs have suffered injuries and sustained damages in an amount according to proof.

23

91. Index's actions and inactions have likewise caused and continue to cause irreparable harm for which Plaintiffs have no adequate remedy at law, as a matter of law and as further specifically acknowledged by the parties under the terms of the agreement.

## Sixth Claim For Relief – Breach Of Confidence

### (Each Plaintiff Against Each Defendant)

92. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

93. Defendants each gained access to Plaintiffs' Confidential Information that they knew was highly sensitive and confidential. The nature of the information and the manner and terms of delivery and access would have alerted any reasonable person to the confidentiality of the information.

94. Plaintiffs did not authorize Defendants to disclose or use the Confidential Information.

95. Defendants breached the duty of confidence they owed to Plaintiffs by disclosing the Confidential Information to third parties and otherwise using the Confidential Information for unauthorized purposes.

96. Defendants' knowing, intentional and willful breaches of the duty of confidence have caused damage, loss and irreparable harm to Plaintiffs, for which there is no adequate remedy at law.

97. Plaintiffs give notice that this claim is potentially based, in whole or in part, on the law of England.

24

## Seventh Claim For Relief – Civil Conspiracy

### (Each Plaintiff Against Each Defendant)

98.     Plaintiffs re-allege and incorporate by reference each and every allegation
contained in the preceding paragraphs as though fully set forth herein.

99.     Defendants knowingly and willfully conspired and agreed among
themselves to damage Plaintiffs by, among other things, causing breaches of Index's
contract with Joost; causing breaches of Volpi's fiduciary duties; intentionally interfering
with Plaintiffs' prospective business advantages; breaching duties of confidence;
misappropriating the Confidential Information; and engaging in unlawful and unfair
business practices amounting to unfair competition.

100.    Defendants did the acts and things herein alleged pursuant to and in
furtherance of the conspiracy and agreement.

101.    Defendants furthered the conspiracy by cooperating with each other, by
lending aid and encouragement to each other, and by ratifying and adopting the acts of
each other.

102.    As a proximate result of the wrongful acts alleged herein, Plaintiffs have
suffered damages.

103.    In doing the things alleged herein, Defendants acted with malice,
oppression and fraud, acted willfully and with the intent to cause injury to Plaintiffs, and
otherwise acted in the interest and pursuit of personal gain, in conscious disregard of
Plaintiffs' rights.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that:

A. The Court issue immediate interim and permanent injunctions:

1. Mandating that Defendants immediately restore and deliver to Plaintiffs any and all documents and files containing or derived from the Confidential Information;

2. Enjoining Defendants, whether by themselves, their servants and agents, or otherwise, from further disclosing or causing the disclosure of the Confidential Information or from making any use of the Confidential Information;

3. Requiring Defendants to provide a complete log of the recipient, content and date and time, of all disclosures of the Confidential Information to third parties;

4. Allowing Plaintiffs the opportunity to examine forensically all past and current repositories of their Confidential Information, and all repositories of derivatives of their Confidential Information, and to wipe all such information from those repositories;

5. Prohibiting Defendants from obtaining or attempting to obtain Confidential Information from third parties;

6. Prohibiting Defendants from soliciting Plaintiffs' employees with offers to leave and compete with Plaintiffs; and

7. Enjoining Defendants from using the misappropriated Confidential Information in pursuing or finalizing the acquisition of Skype;

B. Plaintiffs be awarded damages according to proof;

C. Defendants be forced to disgorge any profits or benefits received by virtue of the Confidential Information and pay appropriate restitution;

D. Defendants be forced to place any and all income, earnings or property obtained or received as a result of any direct or indirect or derivative use of the Confidential Information in a constructive trust for Plaintiffs' benefit;

E. Plaintiffs be awarded their costs of suit and reasonable attorneys' fees incurred in prosecuting this action;

F. Plaintiffs be granted any and all other relief to which they may be justly entitled, including but not limited to interest;

G. The Court award such other and further relief as it may deem proper; and

H. The Court retain jurisdiction over Defendants until such time as the Court is satisfied that their acts and omissions are no longer occurring and will not re-occur.

DATED: September 18, 2009

/s/Thomas J. Allingham II
Thomas J. Allingham II (ID No. 476)
Stephen D. Dargitz (ID No. 3619)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
Post Office Box 636
Wilmington, Delaware 19899
(302) 651-3001

Attorneys for Plaintiffs Joost US, Inc., Joost, N.V., and Joltid Limited

OF COUNSEL:

Thomas J. Nolan
Eric S. Waxman
Lance A. Etcheverry
Allen L. Lanstra, Jr.
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
(213) 687-5000

27

## VERIFICATION

I, Michael Hillel Sosnovik Segerman, hereby affirm and say that:

1.    I am an Authorized Signatory of Guardian Corporate Services Limited,

which is the sole Director of Joltid Limited, and am authorized to make this verification

on behalf of Joltid Limited.

2.    I have read the foregoing Verified Complaint for Damages and Injunctive

Relief.

3.    The facts alleged in the Verified Complaint for Damages and Injunctive

Relief are true and correct to the best of my knowledge, information and belief.

MICHAEL HILLEL SOSNOVIK
SEGERMAN

/...Seen by the undersigned, Me Nathalie BEAUD ZURCHER, a duly authorized Notary Public in Geneva, for legalisation exclusively of the signature of Mr. Michael Hillel Sosnovik SEGERMAN, appearing on reverse side of this document. The undersigned Notary assumes no responsibility as to the content of the present document.-
im/Geneva, September 17th 2009.-





Fr. 2.50

---

## VERIFICATION

I, Anita Cupido, hereby affirm and say that:

1.    I am an Authorized Signatory of Ascor Trust Company, N.V., which is a Managing Director of Joost N.V., and am authorized to make this verification on behalf of Joost N.V.

2.    I have read the foregoing Verified Complaint for Damages and Injunctive Relief.

3.    The facts alleged in the Verified Complaint for Damages and Injunctive Relief are true and correct to the best of my knowledge, information and belief.

(STATE OF)  Curaçao
                                          : SS.
Netherlands Antilles  (County)

SWORN TO AND SUBSCRIBED before me, a Notary Public in the State and County aforesaid, this 17th day of September, 2009.

Notary Public
A.M.P. Eshuis
My Commission Expires: xxxxxx

## VERIFICATION

I, Janus Friis Degnbol, hereby affirm and say that:

1.    I am the Chairman of the Board of Directors of Joost US, Inc. and am

authorized to make this verification on behalf of Joost US, Inc.

2.    I have read the foregoing Verified Complaint for Damages and Injunctive

Relief.

3.    The facts alleged in the Verified Complaint for Damages and Injunctive

Relief are true and correct to the best of my knowledge, information and belief.

STATE OF California      )
                                       : SS.
los Angeles           County)



A. SIMONS
Commission # 1631707
Notary Public - California
Los Angeles County
My Comm. Expires Dec 20, 2009

SWORN TO AND SUBSCRIBED before me, a Notary Public in the State and
County aforesaid, this 17 day of September, 2009. Proved to me on a basis of
satisfactory evidence to be the person who appeared before me

A. Simons
Notary Public

My Commission Expires: December 20, 2009

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

JOOST US, INC., a Delaware corporation,   :
JOOST N.V., a Netherlands Antilles   :
corporation, and JOLTID LIMITED, a British  :
Virgin Islands corporation,   :
  :
      Plaintiffs,   :
  :   C.A. No. _____
      v.   :
  :
MICHELANGELO VOLPI and INDEX   :
VENTURES MANAGEMENT, S.A., a Swiss  :
corporation,   :
  :
      Defendants.   :

### PLAINTIFFS' MOTION FOR EXPEDITED PROCEEDINGS

Plaintiffs Joost US, Inc. ("Joost US"), Joost N.V. ("Joost NV") (collectively,

"Joost"), and Joltid Limited ("Joltid") (collectively, "Plaintiffs"), by their undersigned counsel,

move pursuant to Court of Chancery Rules 30, 32, 34, and 173 for an order expediting the

proceedings in this matter by scheduling an early trial before the end of the year to address

Plaintiffs' request for equitable relief against Defendants Michelangelo Volpi ("Volpi") and

Index Ventures Management, S.A. ("Index") (collectively, "Defendants"). Specifically,

Plaintiffs will seek a judgment that prevents Defendant Volpi, a former fiduciary of Joost, from

participating in a transaction. The grounds for this Motion are as follows:

### Preliminary Statement

1.     Plaintiffs commenced this action by filing, on September 18, 2009, a

verified complaint (the "Verified Complaint")[1] seeking to remedy the threatened irreparable

---

[1]   The facts upon which this Motion is based are set forth in the Verified Complaint and
incorporated herein by reference.

harm caused by Defendants' misappropriation of confidential information belonging to Plaintiffs, which was obtained by defendant Volpi in his capacity as a fiduciary to Joost.

2. As alleged in the Verified Complaint, Volpi has taken advantage of the trust and confidence placed in him to steal confidential, highly proprietary information relating to an extremely popular Internet-based technology, as well as other strategic, commercially valuable and sensitive information, shared with him as a fiduciary.

3. As the former President and Chief Executive Officer of the Joost group of companies, and specifically of Joost US, and as a former director of Joost NV, Volpi was exposed to a significant amount of highly confidential and sensitive information belonging to Joost and Joltid (defined herein, and in greater detail below, as the "Confidential Information"). Volpi had a fiduciary duty to protect the Confidential Information and not use it for his own benefit.

4. Indeed, it was only because of his status as a Joost US officer, Joost NV board member and fiduciary of the Joost group of companies that Volpi was ever given access to trade secrets, including Joltid's valuable Global Index Software ("GI Software"), which is the software program that is the life blood of peer-to-peer technology. A source code version of the GI Software is licensed by Joltid to Joost, allowing Joost to be the first company to successfully deliver television and other video content in real-time over a peer-to-peer network. An executable-only form of the GI Software was licensed by Joltid to a subsidiary of Skype Luxembourg Holdings S.a.r.l. (along with its subsidiaries, "Skype"), a well-known Internet-based company that provides users throughout the world with free or low-cost telephone services over the Internet. Skype did not obtain a license to the GI Software source code, however, and the license it did obtain was terminated based on Skype's breaches of the license agreement.

2

5. Among other highly confidential, material non-public information, Volpi was privy to Joost's efforts, which he directed, to reengineer Joltid's GI Software so as to preserve the peer-to-peer technology and network while eliminating the need for users to download a piece of software, and to develop certain premium service capabilities for peer-to-peer networks (such as "live broadcast" peer-to-peer streaming). Volpi also gained specialized, proprietary knowledge regarding how to modify a commercial service that relies on GI Software and peer-to-peer technology to operate on a platform not utilizing peer-to-peer technology. By virtue of having led the effort to transition the Joost service to a non-peer-to-peer platform, Volpi became intimately familiar with the GI Software, including gaining knowledge of the viability of removing it from a commercial service that relies on it.

6. But for his fiduciary obligation to maintain this information in the strictest confidence and not use it for his own personal benefit or the benefit of persons or entities other than Joost, Volpi would never have been permitted access to such highly proprietary and valuable information.

7. Plaintiffs' Confidential Information has enormous value, in the billions of dollars, and provides Plaintiffs with a substantial competitive advantage in the Internet, telecommunications, networking and media technology sectors. Volpi understood the competitive sensitivity of the Confidential Information and the need to keep it confidential. As a consequence of his fiduciary duties, Volpi was and remains obligated to keep the Confidential Information secret and never to use or disclose it for any unauthorized purpose.

8. In utter disregard for his fiduciary obligations, Volpi used his knowledge of the Confidential Information to form a group of investors (the "Buyout Group") to acquire Skype from eBay. The Buyout Group made a surprisingly aggressive bid for Skype, something that

3

other investors were unwilling to do in the face of ongoing copyright litigation in the United Kingdom and the uncertain future it created for Skype. As noted by Joe Nocera in his September 5, 2009 *New York Times* article, "[m]any people on Wall Street – and a number of telecommunications experts I spoke to this week – were stunned by the price Skype sold for," in part because a Skype loss in pending copyright litigation, "for all intents and purposes, would mean shutting down Skype itself." Numerous sophisticated strategic bidders (including, among others, Google and Microsoft) who initially expressed an interest in Skype could not get comfortable proceeding with formal bids. The reluctance of these sophisticated parties is hardly surprising, given that intellectual property that is essential to Skype's business currently hangs under a cloud of litigation. Yet somehow the successful bidder, led by Volpi, was able to get comfortable with the enormous risks of proceeding with a Skype transaction. That comfort level could have been obtained only with knowledge of and intent to use confidential information that had been misappropriated by Volpi in violation of his fiduciary duties.

9. Volpi's knowledge of the Confidential Information allowed the Buyout Group to make an aggressive bid to purchase Skype because it provided comfort that, regardless of the outcome of the litigation in the United Kingdom, Joltid's continued ownership of the GI Software would not serve as an impediment to the future development and operation of Skype because of his familiarity with the Confidential Information. Volpi's knowledge of the Confidential Information would allow the Buyout Group to circumvent Joltid's intellectual property rights if necessary.

10. In fact, but for his knowledge of the Confidential Information, Volpi would never have been in position to play a key role in the Skype acquisition in the first place. Volpi and Index lacked the credibility and financial heft to lead a private equity investment

4

consortium to acquire Skype unless and until they advertised their knowledge of the Confidential Information. Volpi traded on his knowledge of Plaintiffs' Confidential Information to secure a key role in the Buyout Group's acquisition of Skype.

11. Volpi, acting on behalf of himself and his partners at Index, has maliciously and willfully breached his fiduciary duties. With the aid of, in concert with, and/or on behalf of Index, who owes an independent duty of confidence to both Joost and Joltid, Volpi has misappropriated the Confidential Information and used it to deprive Plaintiffs of their property, as well as the competitive advantages attendant to the Confidential Information.

12. Defendants' misappropriation of the GI Software and Plaintiffs' Confidential Information has caused and will cause irreparable harm if Volpi is allowed to use Confidential Information to the detriment of Plaintiffs. Unless the Court intervenes, Volpi intends to continue to violate his duties and misappropriate the Confidential Information. Volpi has repeatedly failed to comply with Joost's demands that he immediately return his computer and all Confidential Information he obtained in the course of his fiduciary relationship with Joost US and Joost NV. Once the Skype transaction is consummated, Volpi will be in a position to use Confidential Information competitively in a way that will cause Plaintiffs immediate, irreparable harm.

13. Accordingly, the Court should grant Plaintiffs' order for expedited proceedings so that Plaintiffs' claims may be heard at trial on a reasonably expedited basis.

## Argument

14. A plaintiff's request to schedule a preliminary injunction hearing and expedite proceedings "is normally routinely granted." *In re Int'l Jensen Inc. S'holders Litig.*, C.A. No. 14992, 1996 WL 422345, at *1 (Del. Ch. July 13, 1996). Exceptions to this general rule are rare, *see id.*, as the Court of Chancery "has followed the practice of erring on the side of

more [expedited] hearings rather than fewer." *Giammargo v. Snapple Beverage Corp*, Civ. A. No. 13845, 1994 WL 672698, at \*2 (Del. Ch. Nov. 15, 1994). Indeed, "Delaware courts are always receptive to expediting any type of litigation in the interests of affording justice to the parties." *Box v. Box*, 697 A.2d 395, 399 (Del. 1997) (footnote omitted); *see also In re IBP Inc. S'holders Litig.*, 789 A.2d 14, 23 & n.1 (Del. Ch. 2001).

15. Expedited proceedings are appropriate when a plaintiff has a "sufficiently colorable claim" and when there is a "sufficient possibility of a threatened irreparable injury." *Morton v. Am. Mktg. Indus. Holdings Inc.*, C.A. No. 14550, 1995 WL 1791090, at \*2 (Del. Ch. Oct. 5, 1995) (citations omitted) (granting expedited argument on preliminary injunction motion). When determining whether to expedite proceedings, "[t]he Court need not determine the merits of the case or 'even the legal sufficiency of the pleadings.'" *Id.*; *see also Everest Props., Inc. v. Boston Tax Credit Fund II*, C.A. Nos. 15532, 15533, 1997 WL 33174420, at \*1 (Del. Ch. Feb. 20, 1997) (granting motion for expedited discovery and trial).

16. Numerous provisions in the rules of this Court allow for expediting proceedings to provide significant declaratory relief. Court of Chancery Rule 12(a) states, "[f]or cause shown, the Court may shorten . . . the time periods specified herein." Similarly, Rule 30(a) authorizes the noticing of depositions of a defendant before the expiration of thirty days after the service of the summons and complaint; and Rule 34(b) sanctions the shortening of time for responses to requests for production of documents.

17. Justice requires expediting this case. There can be no doubt that the Verified Complaint states a claim for relief. Specifically, the Verified Complaint explains that defendant Volpi was given access to competitively sensitive information belonging to Plaintiffs, including but not limited to highly valuable intellectual property, only because he owed fiduciary duties of

6

care and loyalty to Joost. Among other things, those duties obligated Volpi not to act knowingly in a way contrary to Joost's best interests, and not to misuse assets of Joost for his own personal benefit. The Verified Complaint goes on to explain that Volpi, acting in concert with Index, has breached and continues to breach his fiduciary duties by using confidential information belonging to Plaintiffs for his own personal gain.

18. In similar situations, the Court has expedited proceedings so that appropriate relief may be granted promptly. *See, e.g., Nutzz.com, LLC v. Vertrue Inc.*, C.A. Nos. 1231-N, 1719-N, 2006 WL 4782339, at *2 (Del. Ch. July 25, 2006) (referring to expedited proceedings in action concerning alleged breach of duty of confidentiality); *Technicon Data Sys. Corp. v. Curtis 1000, Inc.*, C.A. No. 7644, 1984 WL 8268, at *1 (Del. Ch. Aug. 21, 1984) (same).

19. Equity does not countenance this behavior. Without expedited relief, Plaintiffs will suffer imminent, irreparable harm from the expropriation of the Confidential Information. By contrast, the expedited proceedings necessary to bring this case to a reasonably prompt trial, consistent with the Court's schedule, will not be unduly burdensome.

## Conclusion

20. WHEREFORE, Plaintiffs respectfully request that the Court schedule an early trial to be conducted before the end of the year.

7

Respectfully submitted,

*Of Counsel*:
Eric S. Waxman
Lance A. Etcheverry
Christopher M. Ledford
Allen Lanstra
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071-3144
Tel.: (213) 687-5000

    /s/ *Thomas J. Allingham II*
Thomas J. Allingham II (ID No. 476)
Stephen D. Dargitz (I.D. No. 3619)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
Tel.: (302) 651-3000
Fax: (302) 651-3001

*Attorneys for Plaintiffs*

DATED: September 18, 2009

8

## SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(a)
### OF THE RULES OF THE COURT OF CHANCERY

The information contained herein is for the use by the Court for statistical and administrative purposes only. Nothing stated herein shall be deemed an admission by or binding upon any party.

1. Caption of Case: Joost US, Inc., a Delaware corp., Joost N.V. a Netherlands Antilles corp. and Joltid Limited, a British Virgin Island corp., v. Michelangelo Volpi and Index Ventures Management, S.A. a Swiss corp.

2. Date filed: 9/18/09

3. Name and address of counsel for plaintiff:
   Thomas J. Allingham II (ID No. 476)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   One Rodney Square
   P.O. Box 636
   Wilmington, Delaware  19899-0636

4. Short statement and nature of claim asserted:
   Breach of fiduciary duty and other claims arising out
    of misuse of confidential information.

5. Substantive field of law involved (check one):

   |  | | |
   |---|---|---|
   | ___ Administrative law | ___ Trade secrets/ | |
   | ___ Commercial law |    trademark/or other | |
   | ___ Constitutional law |    intellectual property | |
   | X___ Corporation law | ___ Trusts* | |
   | ___ Guardianships | ___ Wills and estates*+ | |
   | ___ Labor law | ___ Zoning | |
   | ___ Real Property | ___ Other | |

+6. Related case(s), including any Register of Wills matters, which requires copies of all documents in this matter to be filed with the Register of Wills: None

7. Basis of court's jurisdiction (including the citation of any statute conferring jurisdiction): General equity jurisdiction; 10 *Del. C.* § 341.

8. If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought: An injunction against the continuing disclosure and misuse of proprietary and confidential information.

9A. If the complaint seeks summary proceedings, check here __.
9B. If the complaint seeks expedited proceedings, check here ✓.
    A formal motion must accompany this request.

*10. If the complaint is one that in the opinion of counsel should not be assigned to a Master in the first instance, check here and attach a statement of good cause. ___

                              /s/Thomas J. Allingham II
                              Thomas J. Allingham II (ID No. 476)
                              Signature of Attorney of Record

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

JOOST US, INC., a Delaware corporation,  :
JOOST N.V., a Netherlands Antilles  :
corporation, and JOLTID LIMITED, a British  :
Virgin Islands corporation,  :
  :
     Plaintiffs,  :
  :   C.A. No. _____
     v.  :
  :
MICHELANGELO VOLPI and INDEX  :
VENTURES MANAGEMENT, S.A., a Swiss  :
corporation,  :
  :
     Defendants.  :

## <u>ORDER GRANTING MOTION FOR EXPEDITED PROCEEDINGS</u>

Upon consideration of the motion of Plaintiffs for an order expediting

proceedings, and the Court having considered the matter, IT IS HEREBY ORDERED:

1.    The Motion For Expedited Proceedings is GRANTED.

2.    The parties shall serve formal responses and objections to requests for

discovery no later than ___. Documents shall be produced on or before ____.

3.    Depositions of party witnesses shall be completed by ____. [Depositions

of party witnesses may be had on [___] business days notice.]

4.    Reports of any expert witnesses shall be served on opposing counsel on or

before ___. Depositions of expert witnesses shall be completed by ____.

5.    The parties shall file pretrial briefs on or before ___..

6.    The Court will hold an expedited trial beginning on [December ____,

2009].

SO ORDERED.


DATED: _____, 2009


_____

594068-Wilmington Server 1A - MSW

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JOOST US, INC., a Delaware corporation, | : |
| JOOST N.V., a Netherlands Antilles corporation, | : |
| and JOLTID LIMITED, a British  Virgin Islands | : |
| corporation, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :C.A. No. _____ |
| | : |
| MICHELANGELO VOLPI and INDEX | : |
| VENTURES MANAGEMENT, S.A., a Swiss | : |
| corporation, | : |
| | : |
| Defendants. | : |

REQUEST FOR JUDICIAL ACTION

The following judicial action is hereby requested:

Office Conference                    __X__

Trial ($150. per day)              _____

Argument                               __X__

Motion                                    __X__

Proceeding by Remote

Communication ($150. per day)     __X__

Summary of action desired: <u>Motion for expedited proceedings</u>

Estimated Time Requested:   2 hours

Case Assigned to:  TBD

Court Reporter Yes __X__ No _____

Requesting Attorney:

Thomas J. Allingham II (ID No. 476)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Opposing Counsel:

TBD


  09/  /09           /s/ Thomas J. Allingham II   (ID No. 476)
Date             Signature of Filing Attorney
                  Thomas J. Allingham II (ID No. 476)
                  Stephen D. Dargitz (ID No. 3619)
                  Skadden, Arps, Slate, Meagher & Flom LLP
                  One Rodney Square
                  P.O. Box 636
                  Wilmington, Delaware 19899
                  (302) 651-3000

*Of Counsel*:
Eric S. Waxman
Lance A. Etcheverry
Christopher M. Ledford
Allen Lanstra
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071-3144
Tel.: (213) 687-5000


DATED:  September 18, 2009

2

EFiled: Sep 21 2009 9:57AM EDT
Transaction ID 27164352
Case No. 4906-CC

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE

P.O. BOX 636

WILMINGTON, DELAWARE 19899-0636

TEL: (302) 651-3000
FAX: (302) 651-3001
www.skadden.com

DIRECT DIAL
302-651-3143
DIRECT FAX
888-329-4140
EMAIL ADDRESS
SDARGITZ@SKADDEN.COM

FIRM/A

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

September 21, 2009

**BY E-FILE**

Register in Chancery
Court of Chancery
New Castle County Courthouse
500 North King Street
Wilmington, Delaware 19801

Re: *Joost US, Inc., et al. v. Volpi, et al.*, C.A. No. 4906-CC:
Summons Instructions

Dear Office of the Register:

Pursuant to Court of Chancery Rule 4, I write on behalf of Plaintiffs concerning preparation of service of summonses on the Defendants in the above action, which was filed electronically last Friday, September 18, 2009. On behalf of plaintiffs, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), counsel to plaintiffs and a registered process server, will serve Michelangelo Volpi by hand, pursuant to 10 *Del. C.* § 3114 as a former officer of Joost US, Inc., at the following address:

Michelangelo Volpi
c/o Karis Corporation
874 Walker Road, Suite C
Dover, Delaware 19904

On behalf of plaintiffs, Skadden will serve Index Ventures Management, S.A. by Federal Express, pursuant to 10 *Del. C.* § 3104, at the following address:

Index Ventures Management, S.A.
c/o Parquet du Procureur général
Place du Bourg-de-Four 1
Case postale 3565
1211 Genève 3
Switzerland

       I respectfully request that the Register in Chancery prepare summonses for these defendants and contact me as soon as the summonses are prepared so that we can effect service. If you need further information or have any questions concerning this request, please do not hesitate to contact me at (302) 651-3143.

       Respectfully,

Stephen D. Dargitz (ID No. 3619)

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899-0636
———
TEL: (302) 651-3000
FAX: (302) 651-3001
www.skadden.com

DIRECT DIAL
302-651-3143
DIRECT FAX
888-329-4140
EMAIL ADDRESS
SDARGITZ@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

September 21, 2009

**BY E-FILE**

Register in Chancery
Court of Chancery
New Castle County Courthouse
500 North King Street
Wilmington, Delaware 19801

> Re: *Joost US, Inc., et al. v. Volpi, et al.*, C.A. No. 4906-CC:
> Summons Instructions

Dear Office of the Register:

Pursuant to Court of Chancery Rule 4, I write on behalf of Plaintiffs concerning preparation of service of summonses on the Defendants in the above action, which was filed electronically last Friday, September 18, 2009. On behalf of plaintiffs, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), counsel to plaintiffs and a registered process server, will serve Michelangelo Volpi by hand, pursuant to 10 *Del. C.* § 3114 as a former officer of Joost US, Inc., at the following address:

Michelangelo Volpi
c/o Karis Corporation
874 Walker Road, Suite C
Dover, Delaware 19904

On behalf of plaintiffs, Skadden will serve Index Ventures Management, S.A. by Federal Express, pursuant to 10 *Del. C.* § 3104, at the following address:

Index Ventures Management, S.A.
c/o Parquet du Procureur général
Place du Bourg-de-Four 1
Case postale 3565
1211 Genève 3
Switzerland

       I respectfully request that the Register in Chancery prepare summonses for these defendants and contact me as soon as the summonses are prepared so that we can effect service. If you need further information or have any questions concerning this request, please do not hesitate to contact me at (302) 651-3143.

               Respectfully,

               Stephen D. Dargitz (ID No. 3619)



## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CIVIL ACTION NO. 4906-CC

SUMMONS PURSUANT
TO 10 <u>DEL.C.</u> Sec. 3114

JOOST US, INC., a Delaware corporation,
JOOST N.V., a Netherlands Antilles
corporation, and JOLTID LIMITED, a British
Virgin Islands corporation,

       Plaintiffs,

       v.

MICHELANGELO VOLPI and INDEX
VENTURES MANAGEMENT, S.A., a Swiss
corporation,

       Defendants.

**TO THE** Special Process Server - Skadden Arps Slate Meagher & Flom LLP

**YOU ARE COMMANDED:**

    To Summon the above named individual defendants by service pursuant to 10 <u>Del.C.</u> Sec. 3114 upon <u>Joost US Inc.</u>, a Delaware corporation, by serving its registered agent <u>Karis Corporation</u>, which is designated for service of process in Delaware, so that within the time required by law, such defendants shall serve upon <u>Stephen Dargitz Esq.</u>, plaintiff's attorney whose address is <u>Skadden Arps Slate Meagher & Flom LLP, One Rodney Square, PO Box 636, Wilmington, DE 19899-0636</u> an answer to the complaint.

    To serve upon defendants a copy hereof, of the complaint, and of a statement of plaintiff filed pursuant to Chancery Court Rule 4(dc)(1).

**TO THE ABOVE NAMED DEFENDANTS:**

    In case of your failure, within the time permitted by 10 <u>Del.C.</u> Sec. 3114*, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default may be rendered against you for the relief demanded in the complaint.

Dated: <u>9/21/2009</u>

                        Register in Chancery

*The text of 10 <u>Del.C.</u> Sec. 3114 is set out on the reverse of this Summons

JOOST US, INC., a Delaware corporation,
JOOST N.V., a Netherlands Antilles
corporation, and JOLTID LIMITED, a British
Virgin Islands corporation,

      Plaintiffs,

      v.

MICHELANGELO VOLPI and INDEX
VENTURES MANAGEMENT, S.A., a Swiss
corporation,

      Defendants.

## SUMMONS

1. Michelangelo Volpi
c/o Karis Corporation
 874 Walker Rd, Suite C
Dover, DE 19904

PURSUANT TO 10 DEL. C. SECTION
3114

Sec. 3114. Service of process on non-resident directors, trustees of members of the governing body of Delaware corporations.

  (a)  Every non-resident of this State who after September 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State of who after June 30, 1978, serves in such capacity and every resident of this Sate who so accepts election or appointment of service in such capacity and thereafter removes his residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as his agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of his duty in such capacity, whether or not he continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance of service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State and such appointment of the registered agent (or, if there is none, upon the Secretary of State) shall be irrevocable.

  (b)  Service of process shall be effected by serving the registered agent (or, if there is none, the Secretary of State) with 1 copy of such process in the manner provided by law for service of writs of summons. In addition, the Prothonotary or the Register in Chancery of the court in which the civil action or proceeding is pending shall, within 7 days of such service, deposit in the United States mails, by registered mail, postage prepaid, true and attested copies of the process, together with a statement that service is being made pursuant to this section, addressed to such director, trustee or member at the corporation's principal place of business and at his residence address as the same appears on the records of the Secretary of State, or, if no such residence address appears, at his address last known to the party desiring to make such service.

  (c)  In any action in which any such director, trustee or member has been served with process as hereinabove provided, the time in which a defendant shall be required to appear and file a responsive pleading shall be computed from the date of mailing by the Prothonotary or the Register in Chancery as provided in subsection (b) of this section; however, the court in which such action has been commenced may order such continuance of continuances as may be necessary to afford such director, trustee or member reasonable opportunity to defend the action.

  (d)  Nothing herein contained limits or affects the right to serve process in any other manner now or hereafter provided by law. This section is an extension of and not a limitation upon the right otherwise existing of service of legal process upon non-residents.

  (e)  The Court of Chancery and the Superior Court may make all necessary rules respecting the form of process, the manner of issuance and return thereof and such other rules which may be necessary to implement this section and are not inconsistent with this section (61 Del. Laws, c 119 Sec. 1.)



# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

}

CA #:  4906-CC

SUMMONS

JOOST US, INC., a Delaware corporation,   :
JOOST N.V., a Netherlands Antilles        :
corporation, and JOLTID LIMITED, a British  :
Virgin Islands corporation,               :

      Plaintiffs,                           :

        v.                                 :

MICHELANGELO VOLPI and INDEX
VENTURES MANAGEMENT, S.A., a Swiss
corporation,

      Defendants.

THE STATE OF DELAWARE
TO:   PURSUANT TO 10 DEL. C. SECTION 3104

## YOU ARE COMMANDED:

To summon the above named defendants so that, within 20 days after service hereof upon defendants, exclusive of the day of service, defendants shall serve upon Stephen D. Dargitz Esq., Plaintiff's attorney whose address is Skadden Arps Slate Meagher & Flom LLP, One Rodney Square, PO Box 636, Wilmington, DE 19899-0636 an answer to the complaint.

To serve upon defendants a copy hereof and of the complaint.

## TO THE ABOVE NAMED DEFENDANTS:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney name above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Dated 9/21/2009

_____
Register in Chancery *Chief Deputy*

JOOST US, INC., a Delaware corporation,
JOOST N.V., a Netherlands Antilles
corporation, and JOLTID LIMITED, a British
Virgin Islands corporation,

        Plaintiffs,

        v.

MICHELANGELO VOLPI and INDEX
VENTURES MANAGEMENT, S.A., a Swiss
corporation,

        Defendants.

# SUMMONS

PURSUANT 10 DEL. C. SECTION 3104
Index Ventures Management, S.A.
c/o  Parquet du Procureur général
Place du Bourg-de-Four 1
Case postale 3565
1211 Genève 3
Switzerland

Plaintiff's Attorney:  <u>Stephen D. Dargitz Esq.</u>